UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CARFORA, SANDRA PUTNAM, and JUAN GONZALES, *individually and as representatives of a class of similarly situated individuals*, <br><br> Plaintiffs, <br><br> -v.- <br><br> TEACHERS INSURANCE ANNUITY ASSOCIATION OF AMERICA and TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC, <br><br> Defendants. | 21 Civ. 8384 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

On September 27, 2022, this Court granted the motion to dismiss filed by Defendants TIAA-CREF Individual & Institutional Services, LLC, and Teachers Insurance Annuity Association of America ("Defendants" or "TIAA"), after concluding that Plaintiffs John Carfora, Sandra Putnam, and Juan Gonzales had failed to state a claim. *See Carfora* v. *Tchrs. Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125 (S.D.N.Y. 2022) ("*Carfora I*"). The Court not only dismissed the Complaint, but after concluding that any amendment would be futile, closed the case. Plaintiffs now move under Federal Rules of Civil Procedure 59(e) and 15 to alter or amend the Clerk's judgment closing the case and for leave to amend their Complaint. For the reasons set forth below, the Court grants in part and denies in part Plaintiffs' motion.

**BACKGROUND**[1]

A.   **Factual Background**

The factual background of this case is detailed in the Court's opinion in *Carfora I*.  Briefly, Plaintiffs brought a series of claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 26 U.S.C. §§ 401-420, 29 U.S.C. §§ 1001-1191d, against TIAA, which provided Plaintiffs' employer-sponsored retirement plans with various administrative and investment-related services.  The plans at issue were defined contribution plans, which are "individual-oriented and market-based: participants contribute individual pre-tax earnings into their own accounts, and 'direct the contributions into one or more options on the plan's investment menu, which is assembled by the plan's fiduciaries.'"  *Carfora I*, 631 F. Supp. 3d at 132 (quoting Compl. ¶ 19).

Employer-sponsored defined contribution plans combine the assets of numerous participants and, as such, exercise more leverage than individual investors and obtain lower investment fees.  *Carfora I*, 631 F. Supp. 3d at 132.  As relevant here, TIAA provides recordkeeping services for institutional clients, "TIAA-affiliated investment options in which participants can invest," and individual advisory services.  *Id.* (quoting Compl. ¶ 27).  Plaintiffs allege that in recent years TIAA has focused heavily on individual advisory services, which

---

[1]   The facts for this Opinion are drawn from the Complaint ("Compl." (Dkt. #1)) and Plaintiffs' proposed amended complaint ("PAC" (Dkt. #53-1)), the well-pleaded allegations of which are accepted as true for purposes of this Opinion.  For ease of reference, the Court refers to Plaintiffs' memorandum of law in support of their motion to alter or amend as "Pl. Br." (Dkt. #52); to Defendants' memorandum of law in opposition as "Def. Opp." (Dkt. #54); and to Plaintiffs' reply memorandum in support of their motion as "Pl. Reply" (Dkt. #55).

yield higher fees, and that "[t]he centerpiece of TIAA's new strategy was to aggressively market Portfolio Advisor, a managed account program." *Id.* (quoting Compl. ¶ 29). In pursuit of that expansion, TIAA "tripled the number of 'wealth management advisors' who were responsible for selling Portfolio Advisor services ('Advisors')" between 2011 and 2017. *Id.* (quoting Compl. ¶ 32). These Advisors utilized a process called the "Consultative Sales Process," under which "Advisors cold-called participants in TIAA-administered employer-sponsored plans 'to offer free financial planning services, often describing the service as an included benefit of the plan.'" *Id.* at 132-33 (quoting Compl. ¶ 33). Advisors would then hold a "discovery" meeting with the participant to understand their financial circumstances, during which Advisors would identify and exploit the participant's "pain points" in order to persuade them to obtain Portfolio Advisor's high-end services. *See id.* at 1333. In the final step of the process, Advisors would schedule a follow-up meeting with the participant and pitch Portfolio Advisor. *Id.*

Plaintiffs allege that TIAA instructed Advisors to use a "hat-switching" strategy during this process, whereby Advisors would "wear a 'fiduciary hat when acting as an investment adviser representative and a non-fiduciary hat when acting as a registered broker-dealer representative.'" *Carfora I*, 631 F. Supp. 3d at 133 (quoting Compl. ¶ 59). This "hat-switch" confused Advisors and customers alike. Customers' confusion was then compounded by what Plaintiffs call "an incomplete and misleading comparison of the pros and cons of rolling assets to Portfolio Advisor compared to remaining in employer-

sponsored plans," which comparison left the impression that "if [participants] did not roll over assets … their only other option was to manage their employer-sponsored plan accounts entirely by themselves." *Id.* at 134 (quoting Compl. ¶¶ 64, 66).  Further, Plaintiffs allege, TIAA employed a variety of incentives (and disincentives) to encourage Advisors to push Portfolio Advisor aggressively.  *Id.* at 133-34 (describing economic and career-related incentives).

### B.    Procedural Background

The procedural background leading up to the Court's September 27, 2022 Opinion and Order is also discussed in detail in *Carfora I*.  The Court here briefly discusses certain procedural background relevant to the instant motion.

Plaintiffs filed the Complaint on October 11, 2021.  (Dkt. #1).  The matter was originally assigned to the Honorable John G. Koeltl, but was later reassigned to the Honorable P. Kevin Castel.  Defendants first indicated that they intended to move to dismiss the complaint on October 28, 2021, when they requested an extension of time to submit a pre-motion letter discussing their contemplated motion to dismiss.  (Dkt. #16; *see also* Dkt. #23-24 (pre-motion letters)).

On December 14, 2021, Judge Castel held an initial pre-trial conference in this case and set out a briefing schedule for Defendants' anticipated motion to dismiss.  (Dkt. #26).  Pursuant to Federal Rule of Civil Procedure 16(b)(3)(A), the scheduling order "limit[ed] the time to amend the complaint as of right or move to amend no later than 21 days from the filing of the motion to dismiss."

4

(*Id.*).  On January 5, 2022, the case was again reassigned to the Honorable Lewis J. Liman.  The case was then reassigned to the Honorable Andrew L. Carter, Jr., on January 13, 2022, and finally to this Court on January 18, 2022.

Briefing on TIAA's motion to dismiss was completed in February 2022 and the Court granted the motion in its entirety on September 27, 2022. *Carfora I*, 631 F. Supp. 3d at 131.  (Dkt. #49).  In broad summary, the Court found that: (i) Plaintiffs had failed to state a claim that TIAA was an ERISA fiduciary during the relevant timeframe, because its rollover-related actions and control over plan assets or plan administration did not render it a "functional fiduciary," *id.* at 135-54; (ii) Plaintiffs had failed to state a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), because Plaintiffs pointed only to "TIAA as a putative fiduciary and, ultimately, have failed to allege that TIAA owed any fiduciary duties to them," *id.* at 154; and (iii) two of the named Plaintiffs' claims were time-barred, *id.* at 154-56.  The Clerk of Court entered judgment in favor of TIAA and closed the case on September 28, 2022.  (Dkt. #50).

On October 26, 2022, Plaintiffs filed the instant motion to alter or amend judgment and for leave to file an amended complaint.  (Dkt. #51-52).  They attached the proposed amended complaint (the "PAC") as well as a redline with their original complaint.  (Dkt. #53-1 (PAC); 53-2 (redline)).  TIAA filed its opposition on November 9, 2023 (Dkt. #54), and Plaintiffs replied in support of their motion on November 16, 2023 (Dkt. #55).  Following briefing on the

5

motion, the parties filed a series of letters discussing the implications of two opinions issued after *Carfora I.* (Dkt. #56-58, 61-62).

## DISCUSSION

Plaintiffs' road to submission of the PAC faces numerous hurdles. *First*, this case has been closed. In consequence, Plaintiffs must argue that the judgment for TIAA should be vacated to allow them to file the PAC. *Second*, Plaintiffs face a potential untimeliness and delay argument, inasmuch as the December 14, 2021 scheduling order required any amended pleadings to be filed within 21 days of the motion to dismiss. *Third*, and perhaps most significantly, Plaintiffs must demonstrate that the PAC would not be futile, meaning that the claims in it would survive a motion to dismiss. For the reasons that follow, the Court denies Plaintiffs' motion with respect to Counts I and II of the PAC. As to these claims, the Court finds that the PAC remains futile, insofar as it fails scrutiny under the analysis set forth in *Carfora I.* As to proposed Count III, however, the Court will grant Plaintiffs' motion and vacate the underlying judgment in order to allow Plaintiffs to submit an amended pleading limited to this claim.

## A.    Applicable Law

"In the ordinary course, the Federal Rules of Civil Procedure provide that courts 'should freely give leave' to amend a complaint 'when justice so requires.'" *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (quoting Fed. R. Civ. P. 15(a)(2)). "Where, however, a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be

tempered by considerations of finality." *Id.* at 213. "It is well established that '[a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b).'" *Metzler Inv. Gmbh* v. *Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (quoting *Ruotolo* v. *City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Id.* (citing *Williams*, 659 F.3d at 213) (internal quotation marks omitted); *see also id.* at 145 ("Moreover, the plaintiffs-appellants cite no authority — and we are aware of none — that supports their assertion that the district court was obliged to consider their proposed amendment only under Rule 15(a)(2), effectively replacing the standards under Rules 59(e) and 60(b) with those in Rule 15(a)(2) to decide their post-judgment motion.").

A district court should "grant a Rule 59(e) motion 'only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Metzler Inv. Gmbh*, 970 F.3d at 142 (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)) (internal quotation marks and citation omitted). Accordingly, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister* v. *Davis*, 140 S. Ct. 1698, 1703 (2020). And "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues,

presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *see also Exxon Shipping Co.* v. *Baker*, 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995) (hereinafter, "FEDERAL PRACTICE AND PROCEDURE"))).

Separate and apart from the strict standards of Rule 59, the Second Circuit has repeatedly affirmed that denying a motion for leave to amend under Rule 15(a)(2) would be "proper" if the grounds for the denial were "undue delay, bad faith, dilatory motive, [or] futility." *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec.*, LLC, 797 F.3d 160, 190 (2d Cir. 2015); *accord Sacerdote* v. *New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022). "A proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'" *Balintulo* v. *Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015) (quoting *Lucente* v. *IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).  It is clear, then, that if the Court finds that the motion to amend was filed after undue delay, in bad faith, or for improper reasons, or if the motion to amend were futile, there would be no "manifest injustice" in refusing to vacate the judgment here.

## B.    Analysis

Plaintiffs contend that the PAC provides a basis for vacating the Court's judgment dismissing this case because the amended pleading: (i) "adds further factual detail showing that TIAA provided fiduciary investment advice on a 'regular basis'"; (ii) "adds facts to support the 'knowing participation' claim in Count III"; and (iii) "add[s] facts showing that Plaintiff Carfora's claim is timely" while supplying further facts to toll the statute of limitations as to Plaintiff Gonzales.  (Pl. Br. 3-4).  In the remainder of this section, the Court considers each of Plaintiffs' arguments in turn.

### 1.    The PAC Does Not State a Claim That TIAA Was a Functional Fiduciary

Each of Plaintiffs' three claims in their initial Complaint depended on the factual premise that TIAA was an ERISA fiduciary.[2]  In its initial decision, the Court held that TIAA was not an ERISA fiduciary in this context, and accordingly dismissed all three claims.  *Carfora I*, 631 F. Supp. 3d at 135.  Plaintiffs argue that the Court should vacate its judgment and permit them to file the PAC because the PAC plausibly alleges that TIAA was, in fact, an ERISA fiduciary.  (*See* Pl. Br. 7-9).  After reviewing the new allegations and the existing caselaw, the Court must disagree.

---

[2]    For the reasons discussed by the Court in *Carfora I*, Counts I and II of the PAC necessitate a finding of TIAA's functional fiduciary status.  *See Carfora* v. *Tchrs. Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125, 135 (S.D.N.Y. 2022) ("*Carfora I*"); *see also* PAC ¶¶ 142-156 (claims for breach of fiduciary duty and prohibited transactions between a plan and a fiduciary).

As before, Plaintiffs argue that TIAA is a *de facto*, or "functional" fiduciary.  Under ERISA, one may qualify as a fiduciary

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  In their original briefing, Plaintiffs argued that TIAA was a fiduciary under this statute for a variety of reasons.[3]  As relevant here, they argued that under subsection (ii), TIAA "rendered investment advice with respect to ERISA plan moneys each time an Advisor executed TIAA's Consultative Sales Process and advised ERISA plan participants how they should invest their plan accounts."  (Compl. ¶ 83).[4]

---

[3]     The PAC adds no new allegations concerning subsections (i) or (iii), and thus the Court sees no need to revisit its prior decision rejecting Plaintiffs' arguments concerning these subsections.  *See Carfora I*, 631 F. Supp. 3d at 150-54 (denying Plaintiffs' arguments pertaining to TIAA's use of participant information and product design).  (*See* Pl. Br. 7-9 (arguing only that TIAA provided investment advice on a regular basis)).

[4]     The term "investment advice for a fee" in this context is defined by binding Department of Labor ("DOL") regulations from 1975:

> [T]o plead that a defendant is a fiduciary because it provided investment advice for a fee [in satisfaction of 29 U.S.C. § 1002(21)(A)(ii)], a plaintiff must plead that [i] the defendant provided individualized investment advice; [ii] on a regular basis; [iii] pursuant to a mutual agreement, arrangement, or understanding that [iv] the advice would serve as a primary basis for the plan's investment decisions; and [v] the advice was rendered for a fee.

*Bekker* v. *Neuberger Berman Grp. LLC*, No. 16 Civ. 6123 (LTS) (BCM), 2018 WL 4636841, at *10 (S.D.N.Y. Sept. 27, 2018) (citing 29 C.F.R. § 2510.3-21) (internal quotation marks omitted).

After a lengthy analysis of the statute and regulations, the Court

concluded in *Carfora I* that three things stood in the way of finding TIAA to be a

fiduciary:

- *First*, the Court observed that "for TIAA to have provided advice on a 'regular basis,' [as required under the 1975 DOL regulation] there must have been some number of instances in which advice was provided" — a number that was clearly higher than the "two to three interactions" Plaintiffs alleged. *Carfora I*, 631 F. Supp. 3d at 145. The Court noted that "'regular basis' is meant to be understood in the context of the plan's investment decisions." *Id.* at 146. Accordingly, the Court rejected Plaintiffs' contention "that TIAA's actions constituted regular investment advising on the theory that it is appropriate to aggregate all of TIAA's interactions with various plan participants" as "not supported in the caselaw" and "contradicted by the statutory text and prevailing regulations." *Id.* at 146.

- *Second*, the Court found that "this limited number of actual interactions was related only to one investment decision: that of rolling assets over from the employer-sponsored plan to Portfolio Advisor." *Id.* at 146. That conclusion was relevant to the "regular basis" analysis inasmuch as it underscored that TIAA did not "routinely provid[e] plans with investment advice on a variety of decisions." *Id.* at 146-47.

- *Third*, the Court noted that "Plaintiffs' claims are not bolstered by actions taken *after* the rollover took place" because "assets, having left the plan" are not "still 'moneys or property of such plan'" as required by 29 U.S.C. § 1002(21)(A)(ii). *Id.* at 149. In light of these findings, the Court concluded that "any actions taken as part of TIAA's Portfolio Advisor management following the rollover are outside the scope of the analysis, and do not support Plaintiffs' 'regular basis' arguments." *Id.* at 150.

Plaintiffs now argue that the PAC "plausibly alleges that TIAA acted as a

fiduciary by rendering 'investment advice for a fee ... with respect to any

moneys' of the plans in which Plaintiffs and class members participated and is not futile." (Pl. Br. 9). This argument focuses primarily on the Court's first holding, that the functional fiduciary analysis focuses on "plan-level advising." (*Id.* at 7-9). *See Carfora I*, 631 F. Supp. 3d at 146-47. According to Plaintiffs, the PAC "now explicitly alleges that the accounts of the individual participants who participated in the plans to which TIAA provided investment advice hold virtually all of their plan's assets." (*Id.* at 8). Because the PAC makes that allegation, Plaintiffs argue, it "establishes that participant-level advice is plan-level advice." (Pl. Reply 4).

Despite their attempt to characterize the PAC as merely adding factual allegations, Plaintiffs' motion is in fact a substantive attack on the Court's reading of *LaRue* v. *DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), as confirmed by Plaintiffs' suggestion that the Court "may have overlooked" both the majority and concurring decisions. (Pl. Reply 4). In Plaintiffs' estimation, their newly-alleged facts considered alongside their interpretation of *LaRue* both prove that TIAA was an ERISA fiduciary and warrant vacating a final judgment and submitting the PAC. (*See* Pl. Br. 9 (concluding that "investment advice … to plan moneys held in particular individual accounts … involves the type of fiduciary conduct that concerned the draftsmen of [ERISA]," and therefore "TIAA acted as a fiduciary" and the PAC "is not futile")).

Plaintiffs' last-ditch efforts to relitigate Counts I and II fail. To eb sure, Plaintiffs identify two grounds that *could* merit reconsideration — alleging new facts that would bolster the Complaint enough to survive a motion to dismiss,

and identifying arguments that the Court allegedly "overlooked."  Yet the
instant motion distills to an attempt by Plaintiffs to recast previously-rejected
arguments under the guise of a request to vacate the Court's judgment and
amend the Complaint.  (*See* Def. Opp. 14 ("In their Rule 59(e) motion, Plaintiffs
argue against [the Court's interpretation of ERISA's statutory text and
prevailing regulations] in a lengthy legal exegesis that references their 'new'
allegations only passingly and reads like a motion for reconsideration, not a
motion to amend their pleadings.")).  What is more, neither of Plaintiffs'
proffered grounds for altering or amending the judgment under Rule 59
withstands scrutiny, and the PAC remains deficient under the reasoning of
*Carfora I.*

       To begin, none of the additional facts alleged in the PAC would enable
Counts I and II to survive a motion to dismiss under the legal framework set
out by the Court in *Carfora I.*  Paragraph 12 of the PAC describes one
additional rollover Plaintiff Carfora made, but one more interaction does not a
"regular basis" make.  *See Carfora I*, 631 F. Supp. 3d at 145 ("Plaintiffs'
allegations of two to three interactions are clearly insufficient.").  Moreover, the
passing reference to one additional rollover for one Plaintiff does nothing to
address the Court's legal conclusions regarding ERISA's statutory text and
regulations, discussed above.

       Separately, Plaintiffs' new allegations about post-rollover interactions are
of little use, given the Court's conclusion that "any actions taken as part of
TIAA's Portfolio Advisor management following the rollover are outside the

scope of the analysis." *Carfora I*, 631 F. Supp. 3d at 150.  (*See* PAC ¶ 95).

Paragraphs 96 and 97 of the PAC restate facts from the original Complaint:

that TIAA provided one-off rollover recommendations to many plan

participants, and that it did so through the Consultative Sales Process.  (*See*

*generally* Compl. ¶¶ 32-33, 58, 88, 96-97).  *See Carfora*, 631 F. Supp. 3d at

132-33 (describing the interactions with plan participants as part of the

Consultative Sales Process).  And the conclusory allegations in paragraph

100 — that plan participants' accounts "hold the assets of the entire plan," and

thus that "TIAA's conduct satisfies [the statute and regulations]" — are little

more than an effort to sweep prior factual allegations and the Court's legal

analysis under the rug.

Perhaps acknowledging this reality, Plaintiffs eventually concede that

they are, in fact, asking for reconsideration of the Court's legal framework.

Plaintiffs renew their argument that "participant-level advice is plan-level

advice" (Pl. Reply 4), but that is an argument that *Carfora I* plainly forecloses.

*Carfora I*, 631 F. Supp. 3d at 146-47.  Of course, motions for reconsideration

"may not be used to relitigate old matters."  *Exxon Shipping Co.*, 554 U.S. at

485 n.5.  As such, Plaintiffs' "new" allegations seeking to upend this Court's

legal conclusions and their professed disagreement with those conclusions do

not warrant vacating the judgment.

Next, Plaintiffs suggest that the Court simply misread *LaRue*, and that a

proper reading would support reconsideration of *Carfora I.*  (Pl. Reply 4).  But

their arguments misperceive the Court's decision.  To review, in *Carfora I*, the

Court stated that

> Plaintiffs contend that TIAA's actions constituted
> regular investment advising on the theory that it is
> appropriate to aggregate all of TIAA's interactions with
> various plan participants.  But this argument is not
> supported in the caselaw, and indeed is contradicted by
> the statutory text and prevailing regulations.  Plaintiffs'
> citation to a Supreme Court concurrence joined by only
> two Justices in *LaRue* v. *DeWolff, Boberg & Assocs., Inc.*,
> 552 U.S. 248 (2008) (Thomas, J., concurring), only
> underscores this point.  Further, in the cases Plaintiffs
> cited throughout their opposition, whether the
> defendant-respondent was a fiduciary in the first
> instance was not at issue. *See, e.g.*, *id.* at 252-53.
> *LaRue* says nothing about the functional fiduciary
> provisions, let alone what it means to provide
> investment advice on a regular basis to an ERISA plan.

*Carfora I*, 631 F. Supp. 3d at 146 (internal citation omitted).  The Court indeed

stated that Plaintiffs' reliance on a concurring opinion did not alter its analysis.

But this was precisely because Plaintiffs' lead citations to *LaRue* were to the

concurrence.  (*See* Dkt. #42 at 14 (discussing *LaRue* concurrence)).  In the

instant motion, Plaintiffs suggest that "the Court may have overlooked that

Plaintiffs also cited controlling caselaw — the *LaRue* majority opinion — in

support of their argument that assets held in an individual defined-

contribution plan account are *plan* assets for ERISA purposes."  (Pl. Reply 4).

It did not.  *Carfora I* clearly addresses the *LaRue* majority decision, noting that

"whether the defendant-respondent was a fiduciary in the first instance was

not at issue," and that the earlier case "says nothing about the functional

fiduciary provisions, let alone what it means to provide investment advice on a

regular basis to an ERISA plan." *Carfora I*, 631 F. Supp. 3d at 146 (citing *LaRue* majority decision).

A litigant's disagreement with a court's analysis is not uncommon, and certainly not a basis to vacate a judgment.  As it happens, however, two district courts have recently adopted this Court's reading of *LaRue*: *Federation of Americans for Consumer Choice, Inc.* v. *United States Department of Labor*, No. 22 Civ. 243 (K) (BT) (N.D. Tex. June 30, 2023) ("*FACC*"),[5] and *American Securities Association* v. *United States Department of Labor*, No. 22 Civ. 330 (VMC) (CPT), 2023 WL 1967573 (M.D. Fla. Feb. 13, 2023), *appeal dismissed sub nom. Am. Sec. Ass'n* v. *U.S. Dep't of Lab.*, No. 23-11266-F, 2023 WL 4503923 (11th Cir. May 17, 2023).  These opinions reinforce the Court's conclusion that the PAC's proposed changes do not suffice to render Counts I and II viable.

In *American Securities Association*, the plaintiff moved for summary judgment seeking, among other relief, vacatur of DOL's "frequently asked questions (FAQs)" pertaining to the 2020 agency guidance discussed in *Carfora I.  See Am. Sec. Ass'n*, 2023 WL 1967573, at *4.  Specifically the *American Securities Association* court observed that FAQ 7, consistent with the 2020 guidance, stated that "the provision of advice to roll over assets could constitute the rendering of investment advice if that advisor 'expects to regularly make investment recommendations regarding the IRA as part of an

---

[5]     As of the writing of this Opinion, the *FACC* opinion is not available on legal research databases.  The Northern District of Texas's opinion was submitted in conjunction with Plaintiffs' notice of supplemental authority at docket entry 61.

ongoing relationship.'" *Id.* at *16 (quoting FAQ 7). "[G]uided" by this Court's decision in *Carfora I*, the court found that this FAQ was an unreasonable interpretation of ERISA and the 1975 regulation. *Id.* Instead, the *American Securities Association* court adopted *in toto* this Court's findings that: (i) "'regular basis is meant to be understood in the context of the plan's investment decisions,'" *id.* (quoting *Carfora I*, 631 F. Supp. 3d at 146) (internal quotation marks omitted); (ii) "the 'promise of future investment advice, ... is not, itself, an additional instance of advice-giving relevant to the regular basis inquiry,'" *id.* at *17 (quoting *Carfora I*, 631 F. Supp. 3d at 149); and (iii) *LaRue* was simply inapplicable to the issue at hand, *id.* at *18 ("Nothing in that decision suggests the word 'plan' in ERISA really means 'the investor's assets,' regardless of the plan.").

The Northern District of Texas's decision in *FACC* is arguably more limited than *American Securities Association*, but nonetheless supports this Court's decision in *Carfora I* and its present conclusions regarding the viability of the PAC. The *FACC* court found, among other things, that "[t]he new interpretation generally comports with ERISA and the common law meaning of a fiduciary." *FACC*, slip op. at 38, 41 ("A financial professional who works regularly with a specific plan and cultivates a relationship of trust and confidence with retirement investors may be acting as a fiduciary in light of the common law of trust's defining traits."). Plaintiffs suggest that the *FACC* decision salvages their case, insofar as the court notes that "[n]othing in the five-part test or ERISA expressly excludes rollovers from the DOL's purview

under Title I or Title II." *Id.*, slip op. at 64. Yet Plaintiffs, as before, have
homed in on the Consultative Sales Process as establishing the requisite
fiduciary relationship under the five-part test, arguing that such advice was
"the beginning of an intended future ongoing relationship between the
participant and TIAA Services through Portfolio Advisor." (PAC ¶ 94; *see also
id.* ¶ 95 ("As part of the Consultative Sales Process, Advisors informed
participants that the advice relationship would continue after the rollover."); *id.*
¶ 96 (adding conclusory allegations pertaining to "fund-level allocation advice"
disconnected to the conduct at issue in the PAC, *i.e.*, the Consultative Sales
Process)).

In point of fact, *FACC* supports this Court's understanding that the five-
part test is limited to investment advice on a regular basis, and that future
advice once assets are rolled out of plans cannot create a fiduciary
relationship. As in *Carfora I*, the *FACC* court found that "[t]he precise contours
of what constitutes a 'regular basis to the plan' need not be defined here, but
the text and structure of the five-part test must mean advice given more than
once to a specific Title I or Title II plan." *Id.*, slip op. at 54; *see also Carfora I*,
631 F. Supp. 3d at 145 ("First, for TIAA to have provided advice on a 'regular
basis,' there must have been some number of instances in which advice was
provided. The Court need not decide what, exactly, that number is, because
Plaintiffs' allegations of two to three interactions are clearly insufficient."). And
in line with the Court's holding in *Carfora I*, the *FACC* court found that "the
text and structure of ERISA supports a reading where the advice relationship

18

must be determined by only looking to whether a fiduciary relationship exists in regard to a specific plan." *FACC*, slip op. at 55 (citing *Carfora I*, 631 F. Supp. 3d at 146, and *Am. Sec. Ass'n*, 2023 WL 1967573, at *16).  Finally, the *FACC* court's analysis of *LaRue* — which evidently was relied on by DOL — is consistent with this Court's understanding. *Id.*, slip op. 46 ("This case is inapposite. *LaRue* dealt with claims reaching assets of individual accounts that are wholly encompassed in Title I plans, while the New Interpretation now reviews relationships that span Title I and Title II plan assets to determine fiduciary status.").

In sum, two district courts have expressly adopted this Court's holding in *Carfora I* as it pertains to interpretation of the five-part test and DOL's conflicting new guidance.  That interpretation of the five-part test led to dismissal of this case, and Plaintiffs' proposed amendments — four "new" paragraphs discussing investment advice for a fee that largely rehash the failed allegations of the original Complaint — do nothing to save their claims on Counts I and II.  In particular, Plaintiffs provide the Court no reason to disturb its prior conclusion regarding TIAA's non-fiduciary status and, accordingly, claims seeking relief on that basis would be futile.  The Court will not vacate the judgment in order to permit Plaintiffs to file Counts I and II of the PAC.[6]

---

[6]     The Court pauses to briefly address the interplay between Rules 59 and 15 in reaching this result.  Unsurprisingly, the parties titrate these rules differently in their submissions.  Plaintiffs, for their part, appeal to the liberal spirit of Rule 15, relying on cases like *Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015). (*See, e.g.*, Pl. Br. 4-5).  As Defendants point out, *Loreley* did not concern the post-judgment context. (Def. Opp. 10 n.6).  In that context, parties seeking leave to amend must also satisfy the strictures of Rule 59. *See, e.g., Axar Master Fund, Ltd.* v. *Bedford*, 806 F. App'x 35, 38-40 (2d Cir. 2020) (summary order) (discussing the

## 2.    The Court Will Vacate the Judgment to Allow Plaintiffs to Replead Count III

Plaintiffs do propose one claim that does not turn on TIAA's status as a fiduciary.  Count III of the PAC alleges a violation of ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which extends liability for ERISA violations to certain non-fiduciaries.  (*Compare* Compl. ¶¶ 128-132 (prior allegations), *with* PAC ¶¶ 157-164 (new allegations)).  The Court previously discussed Section 502(a)(3) in *Carfora I*, the elements of which include "[i] breach by a fiduciary of a duty owed to plaintiff, [ii] defendant's knowing participation in the breach, and [iii] damages."  631 F. Supp. 3d at 154 (quoting *Tr. of Upstate N.Y. Eng'rs Pension Fund* v. *Ivy Asset Mgmt.*, 843 F.3d 561, 571 (2d Cir. 2016)).

The PAC's allegations with respect to Count III present issues fundamentally different from those discussed earlier in this Opinion and in *Carfora I*.  To review, the original Complaint was quite sparse with respect to this claim.  The body of the Complaint pleaded no allegations specific to Count

---

interplay between the Rules, and finding both that the plaintiffs waived any arguments pertaining to the sufficiency of amendment, while also finding that plaintiffs "failed to satisfy the stringent standards for granting reconsideration under Rule 59").

The Court will not hold Plaintiffs' previous failures to amend the Complaint with respect to the functional fiduciary issue against them.  (Def. Opp. 9-11.)  That said, it remains the case that: (i) the bulk of Plaintiffs' briefing reads like a motion for reconsideration; (ii) Plaintiffs' new allegations are functionally a repackaging of prior arguments the Court rejected in *Carfora I*; and (iii) mere disagreement with the Court's reasoning is not a reason to vacate the judgment.  The Court has taken account of *Loreley*'s guidance that "pleading defects may not only be latent, and easily missed or misperceived without full briefing and judicial resolution; they may also be borderline, and hence subject to reasonable dispute."  797 F.3d at 191.  This case presents complicated questions of statutory and regulatory interpretation, and this Court is well aware of the fact that *Carfora I* has served as a guidepost for subsequent district court opinions.  The Court merely seeks to clarify here that with particular respect to the functional fiduciary issues discussed in *Carfora I* and the instant Opinion, the Court finds that Plaintiffs' PAC remains futile and, further, the Court rejects previously-made arguments under the standards governing Rule 59.

III, but simply recited the elements of the claim in the cause of action. (*See* Compl. ¶¶ 128-32 (noting that "[f]iduciary status is not a prerequisite to liability" with respect to this claim, and that "TIAA and TIAA Services knew that the course of conduct described herein was fraudulent and unlawful")). Under the theory of liability articulated in the original Complaint, even if TIAA were not an ERISA fiduciary, it "remains subject to restitution, disgorgement, or a constructive trust, which are appropriate equitable remedies under 29 U.S.C. §1132(a)(3)." (*Id.* ¶ 132).

The problems with this claim as originally pleaded were discussed at length in connection with the original motion to dismiss. In both the pre-motion letters and the briefing, both sides acknowledged that, as pleaded, the claim rose or fell with a finding of fiduciary status with respect to TIAA. (*See* Dkt. #23-24 (pre-motion submissions); *compare* Dkt. #36 at 26 (Defendants' opening brief) ("The Complaint anticipates that this Court will apply well-established law that TIAA is not a fiduciary to the plans. For this reason, the Complaint states that 'fiduciary status is not a prerequisite to liability.' This allegation is not sufficient to save a claim for nonfiduciary receipt of ill-gotten profits." (internal citation omitted)), *with* Dkt. 42 at 27 (Plaintiffs' opposition) ("TIAA's argument for dismissal of Count III relies entirely on the premise that Plaintiffs have failed to plausible allege a breach by any fiduciary. Plaintiffs have plausibly alleged the fiduciary status of the TIAA entities for the reasons stated above.... Accordingly, there is no basis for dismissing Count III." (internal citation omitted)), *and* Dkt. #46 at 11 (Defendants' reply) ("The parties

agree that the Section 502(a)(3) claim (Count III) requires a breach of duty by an ERISA fiduciary and knowing participation by TIAA in that breach.")).  In all, the parties devoted three paragraphs in three briefs to this claim, because it was clear from the Complaint that Plaintiffs identified *only TIAA* as a putative fiduciary in the Complaint.  And the Court dismissed the claim on precisely that ground: TIAA was not a fiduciary under the Court's reasoning in *Carfora I*. 631 F. Supp. 3d at 154 ("For the reasons noted above, Plaintiffs have only identified TIAA as a putative fiduciary and, ultimately, have failed to allege that TIAA owed any fiduciary duties to them; *a fortiori*, Plaintiffs' claim that TIAA might otherwise be liable under a theory that requires a breach by a fiduciary and TIAA's knowing participation in said breach fails as a matter of law.").

The PAC adopts an entirely new tack.  Plaintiffs now allege that their *plan sponsors* breached ERISA fiduciary duties, and that TIAA participated in those breaches.  (*See, e.g.*, PAC ¶¶ 121 ("By causing their plans to hire and retain TIAA as a service provider and to engage in unchecked cross-selling resulting in transfers of plan assets to TIAA for TIAA's own benefit, the sponsors caused their plans to engage in prohibited transactions with a party in interest."), 124 ("Defendants knew of the circumstances that rendered the plan sponsors' conduct a breach of fiduciary duties and the circumstances that rendered the transactions involving their services and transfers and use of plan assets unlawful.")).  For avoidance of doubt, this particular theory of TIAA liability, relying on plan sponsors' purported breaches of fiduciary duties and

TIAA's knowing participation in those breaches, appears nowhere in the original Complaint or the briefing on the motion to dismiss.

In response to this new theory of liability, TIAA makes two arguments: (i) the proposed new facts constitute an entirely new legal theory — in essence, a new claim — which is inappropriate on a Rule 59(e) motion (Def. Opp. 19-20); and (ii) even with the additional facts, the proposed amendments would be futile (*id.* at 20-23). As to the first argument, Plaintiffs admit as much. While Plaintiffs misleadingly suggest that "the theory asserted in Count III of the PAC is identical to that asserted in the original [C]omplaint" (Pl. Reply 6), in the very next sentence they clarify that "[a]lthough Plaintiffs believed that their allegations regarding TIAA's fiduciary status were sufficient to establish a knowing participation claim, the Court concluded otherwise because the failure to allege TIAA's fiduciary status negated the required element of a 'breach by a fiduciary'" (*id.* (internal citation omitted)). Plaintiffs reluctantly acknowledge that "[t]he proposed amendment seeks to cure that deficiency by adding factual allegations showing a breach and prohibited transactions caused by other fiduciaries." (*Id.* at 6-7).

It is here where Rule 59(e) is most relevant. As noted, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp.*, 156 F.3d at 144 (internal citations omitted). A Rule 59 motion is not the proper vehicle through which a party may advance new claims or theories. *See, e.g.*, *In re Star Gas Sec. Litig.*, 241

23

F.R.D. 428, 432 (D. Conn. 2007) ("Here, the proposed amendments are of such a nature that they could have been advanced previously — they limit the proposed class period, refine the claimed misrepresentations, and assert a new theory with respect to the alleged statements concerning hedging.").

Plaintiffs never raised the prospect of seeking relief based on plan sponsors' purported breaches of fiduciary duties and TIAA's participation in such breaches. Time and time again, Plaintiffs stated that their Complaint sought only liability premised on TIAA's alleged fiduciary status, and never requested leave to amend to plead facts pertaining to such new theories premised on any others' breaches.[7] This is why their claim failed at the motion to dismiss stage, and this is why the Court denied leave to amend, as Plaintiffs were unable to overcome the Court's conclusions of law as to TIAA's fiduciary status.

In the post-judgment context, "[w]here a proposed pleading 'deals with events that occurred before the filing of the original pleading,' courts will not grant leave to supplement because the pleading is 'in reality an amended pleading.'" *Aktiebolag* v. *Andrx Pharms., Inc.*, 695 F. Supp. 2d 21, 26 (S.D.N.Y. 2010) (quoting FEDERAL PRACTICE AND PROCEDURE § 1510). Still, the Court recognizes the tension that inheres in the interplay of Rules 59 and 15 in the post-judgment context. *See, e.g.*, *Schwartz* v. *HSBC Bank USA, N.A.*, No. 14

---

[7] Plaintiffs requested leave to amend in the original briefing only with respect to pleading additional facts relevant to tolling ERISA's limitations period. (*See* Dkt. #42 at 30 ("Should the Court find greater detail needed under Rule 9(b) to toll § 1113, Plaintiffs request leave to provide it through an amended pleading.")).

Civ. 9525 (KPF), 2017 WL 2634180, at *6 n.3 (S.D.N.Y. June 19, 2017) (surveying cases discussing the interplay between the rules, and finding that the plaintiff could not satisfy the "manifest injustice" standard of Rule 59 or overcome the plaintiff's undue delay "to cure his pleading deficiencies despite multiple opportunities"), *aff'd*, 750 F. App'x 34 (2d Cir. 2018) (summary order).

A countervailing consideration in the post-judgment context is whether Plaintiffs have raised the prospect of colorable relief, even if their new theory was not pleaded in the original Complaint. *See, e.g.*, *Foman* v. *Davis*, 371 U.S. 178, 182 (1962). The Court has cataloged Plaintiffs' repeated failures to amend their pleading and their current doubling-down on a faulty theory of liability. That said, the PAC appears to include sufficient factual content with respect to a non-fiduciary theory.[8]  As Plaintiffs point out, a recent District of Connecticut case (which post-dates *Carfora I*) denied Yale University's motion for summary judgment with respect to a claim that Yale breached its duty of prudence to lower recordkeeping fees and prevent unreasonable cross-selling of TIAA's financial products. *See Vellali* v. *Yale Univ.*, No. 16 Civ. 1345 (AWT), 2022 WL 13684612, at *13 (D. Conn. Oct. 21, 2022) ("[T]he plaintiffs' claim is not that the defendants were imprudent because they disclosed confidential information or because they failed to leverage cross-selling to negotiate a better deal. Rather, the plaintiffs' claim is that Yale's failure to prohibit TIAA from cross-selling was imprudent because Yale made no effort to obtain information about

---

[8]    The Court does not mean to pre-judge any possible future motion practice with respect to Count III.  The Court instead only means to discuss whether it should allow Plaintiffs to attempt to replead that Count.

TIAA's cross-selling revenues and thus could not make an informed decision about whether TIAA's total compensation, including that from cross-selling, was no more than reasonable."). The PAC pleads the same theory as that pleaded in *Vellali* with respect to cross-selling revenues. (*See, e.g.*, PAC ¶¶ 113-126).

Defendants contend that the claim is nonetheless facially futile for a variety of reasons. As it relates to cross-selling, Defendants contend that the PAC does not plead that payments were unreasonable, and instead suggests that cross-selling is *per se* unreasonable. (Def. Opp. 20-21). But this was the same argument that the defendants in *Vellali* raised without success. 2022 WL 13684612, at *13. And to the extent reasonableness — a fairly fact-intensive issue — is in question, the Court generally agrees at this early stage that Plaintiffs have at least raised a plausible inference of unreasonableness by pointing to the exponential growth of TIAA's financial products. (*See* Pl. Reply 8).[9] Defendants further argue that Plaintiffs' claim fails with respect to use of participant information. (Def. Opp. 21). But this argument confuses the issues. *Carfora I* addressed participant information in the context of concluding that TIAA was not a fiduciary; under Plaintiffs' new theory here, they plead that plan sponsors breached duties by failing to safeguard such information. (*See, e.g.*, PAC ¶ 125). Although the theory may not ultimately prevail, Defendants' current argument for why it fails misses the mark.

---

[9]     With respect to other (minor) pleading issues, such as identifying plan sponsors by name, the Court believes such issues could be easily remedied through submission of an amended pleading.

Beyond possible breach, Defendants also attack Plaintiffs' non-fiduciary theory on the grounds that Plaintiffs fail to plead TIAA's knowing participation, as required by Section 502(a)(3).  (Def. Opp. 22-23).  In essence, Defendants' arguments are that TIAA is a third-party service provider, under no duty to monitor sponsors' actions, and that mere receipt of cross-selling revenues cannot state a claim.  (*Id.*).  Defendants are correct that mere knowledge and receipt of fees do not support a Section 502(a)(3) make out a claim.  *See, e.g.*, *Tr. of Upstate N.Y. Eng'rs Pension Fund* v. *Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 132 (S.D.N.Y. 2015), *aff'd*, 843 F.3d 561 (2d Cir. 2016).  But as Plaintiffs point out without pushback from Defendants, cases like *Haley* v. *Teachers Insurance and Annuity Association of America* have explained that a non-fiduciary need only have actual or constructive notice that they participated in a breach of fiduciary duty.  377 F. Supp. 3d 250, 261 (S.D.N.Y. 2019) ("[T]he most natural reading of 'actual or constructive knowledge of the circumstances that rendered the transaction unlawful' requires knowledge of the underlying factual circumstances relevant to lawfulness, not knowledge of the legal conclusion that the transaction was unlawful." (quoting *Harris Tr. & Sav. Bank* v. *Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000))).  Plaintiffs plead much more than TIAA simply receiving passive fees; instead, they plead that TIAA, through its own conduct, reaped massive increases in cross-selling revenues and used participant data through their dealings with plan sponsors, and that they caused sponsors to engage in such behavior.  At this stage, in line with the theory argued in *Vellali*, that is sufficient.

27

To review, Plaintiffs' amended Count III was entirely missing from the original Complaint in this case. However, Plaintiffs have suggested a means to replead this non-fiduciary claim in a manner that could plausibly survive a motion to dismiss. Considering the remaining factors in the analysis, the Court observes that this case remains in its infancy; indeed, the parties have only engaged in motion to dismiss practice, and Plaintiffs moved quickly to amend following the Court's dismissal of the Complaint. As such, the Court will grant Plaintiffs' Rule 59 motion only as it relates to Count III of the PAC, and then only with respect to its claim of liability for non-fiduciary receipt of ill-gotten profits, as Plaintiffs have made a showing that this portion of Count III may not be futile.[10]

## CONCLUSION[11]

For the reasons set forth in this Opinion, Plaintiffs' motion to alter or amend the judgment and for leave to file an amended complaint is GRANTED

---

[10]   Defendants concede, for purposes of the instant motion, that Plaintiffs have pleaded that Plaintiff Carfora's potential claims are timely. (Def. Opp. 23 n.14). The parties dispute, however, whether Plaintiffs have adequately pleaded that Plaintiff Gonzales's claims are subject to equitable tolling, as they would otherwise be barred by the statute of limitations. (Pl. Reply 9-10; Def. Opp. 24-25). The parties principally grapple with this issue in the context of breach of fiduciary duty claims (*i.e.*, Counts I and II), which claims the Court has concluded remain futile in light of its decision in *Carfora I.* The Court does not reach whether Plaintiff Gonzales's claim for non-fiduciary receipt of ill-gotten profits is time-barred at this time, as the theory of liability for such claim is fundamentally different.

[11]   The Court declines to consider the effect of the previous scheduling order requiring submission of an amended complaint within 21 days after filing of the motion to dismiss for purposes of this motion. (Pl. Br. 16-19; Def. Opp. 11). To be clear, the Court finds Plaintiffs' argument that the scheduling order entered by Judge Castel is invalid to be without any support. That being said, the Court finds that Plaintiffs acted expeditiously following publication of *Carfora I* and that at this preliminary stage have shown that the amended Count III is not futile as it concerns non-fiduciary receipt of ill-gotten profits. As such, the Court agrees with Plaintiffs that they could not have immediately recognized flaws in their pleading without this Court's motion to dismiss opinion in *Carfora I.* As Plaintiffs point out, the Court itself recognized the complicated

IN PART and DENIED IN PART.  Specifically, the Court DENIES the motion with respect to Counts I and II of the PAC.  The Court GRANTS the motion with respect to Count III of the PAC for non-fiduciary receipt of ill-gotten profits. (PAC ¶¶ 157-64).  The Court vacates the prior judgment in this case.  Plaintiffs may submit an amended complaint as to Count III only, hewing to this Court's Opinion and supplementing the PAC with any additional factual material relevant to the claim, by **September 11, 2023.**  By **October 2, 2023**, the parties shall file a joint letter discussing next steps in this case, including whether Defendants intend to answer or otherwise engage in motion practice, and a schedule for submission of a proposed case management plan.

The Clerk of Court is directed to terminate the pending motion at docket entry 51 and to reopen this case.

SO ORDERED.

Dated:      August 21, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

_____

issues presented by *Carfora I*, and the Court indeed rejected one of Defendants' principal arguments in favor of dismissal in its opinion.  (Pl. Br. 18).