UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN CARFORA, SANDRA PUTNAM, and JUAN
GONZALES, *individually and as representatives of
a class of similarly situated individuals*,

                    Plaintiffs,

                    -v.-

TEACHERS INSURANCE ANNUITY ASSOCIATION
OF AMERICA and TIAA-CREF INDIVIDUAL &
INSTITUTIONAL SERVICES, LLC,

                    Defendants.

---

21 Civ. 8384 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    Plaintiffs John Carfora, Sandra Putnam, and Juan Gonzales (together,
"Plaintiffs") bring claims against Defendants TIAA-CREF Individual &
Institutional Services, LLC, and Teachers Insurance Annuity Association of
America ("Defendants" or "TIAA") in connection with Defendants' provision of
various administrative and investment-related services to Plaintiffs' employer-
sponsored retirement plans covered by the Employee Retirement Income
Security Act of 1974 ("ERISA"), 26 U.S.C. §§ 401-420, 29 U.S.C. §§ 1001-
1191d.  On August 21, 2023, the Court granted partial reconsideration of its
September 27, 2022 Opinion and Order dismissing the original complaint in
this case, and provided Plaintiffs with leave to file an amended complaint.  *See
Carfora* v. *Teachers Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125 (S.D.N.Y.
2022) ("*Carfora I*"), *reconsideration granted in part*, No 21 Civ. 8384 (KPF), 2023
WL 5352402 (S.D.N.Y. Aug. 21, 2023) ("*Carfora II*").  Plaintiffs have done so,
and now before the Court is Defendants' motion to dismiss Plaintiffs' Second

Amended Complaint (or "SAC").  For the reason set forth herein, the Court
denies Defendants' motion.

## BACKGROUND[1]

### A.      Factual Background

As discussed in greater detail below, while Plaintiffs' theory of liability
differs from that contained in the original complaint, the factual allegations of
this case remain substantially similar, and were summarized in the Court's
prior opinions in *Carfora I* and *II*.  The Court therefore discusses those facts
pertinent to the knowing participation claims raised in the SAC, and presumes
knowledge of the general background of the case.  *See Carfora I*, 631 F. Supp.
3d at 131-34; *Carfora II*, 2023 WL 5352402, at *1-2.

### 1.      Plaintiffs' Participation in the ERISA Plans

Plaintiffs are current or former researchers and university professors who
are participants in ERISA-governed defined-contribution retirement plans
sponsored and administered by their employers or related designated entities
(the "Plan Sponsors").  (SAC ¶¶ 12-14).  Unlike a defined benefit plan, in which
participants are guaranteed a monthly payment over time, defined-contribution
plans are individual-oriented and market-based: participants contribute pre-
tax earnings into their own individual accounts, and "direct the contributions

---

[1]      The facts for this Opinion are drawn from the Second Amended Complaint ("SAC" (Dkt.
#71)), the well-pleaded allegations of which are accepted as true for the purposes of this
Opinion.  For ease of reference, the Court refers to Defendants' memorandum of law in
support of their motion to dismiss the Second Amended Complaint as "Def. Br." (Dkt.
#75); to Plaintiffs' memorandum of law in opposition as "Pl. Opp." (Dkt. #76); and to
Defendants' reply memorandum in further support of their motion as "Def. Reply" (Dkt.
#77).

into one or more options on the plan's investment menu, which is assembled by the plan's fiduciaries," *i.e.*, the Plan Sponsors.  (*Id.* ¶¶ 19, 74).  The Plan Sponsors combine these contributions from the individual plan participants in order to obtain lower investment fees and administrative costs.  (*Id.* ¶¶ 19-21). This practice is important, as "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan."  (*Id.* ¶ 20).

TIAA, for its part, contracts with the Plan Sponsors plans to provide administrative services, including recordkeeping for the Plan Sponsors, as well as investment-related services.  (SAC ¶ 22).  The latter category of services includes assembling "TIAA-affiliated investment options in which [plan] participants can invest," as well as individual advisory services for plan participants.  (*Id.*).  Plaintiffs allege that in recent years TIAA has focused heavily on individual advisory services, which yield the highest fees out of the various services offered to defined-contribution plans, and are the most lucrative of its ERISA-related service offerings.  (*Id.* ¶¶ 26-27).

### 2. Portfolio Advisor and TIAA's Cross-Selling Campaign

The centerpiece of these individual advisory services is "Portfolio Advisor," a managed account program that places the plan participant in a model portfolio that often included TIAA-affiliated funds, and provides ongoing investment advice that rebalances the assets if the account deviates from the model portfolio allocation by a certain amount.  (SAC ¶¶ 29-30).  Plan participants, such as Plaintiffs, paid "multiple layers of fees in Portfolio

Advisor, in an amount much higher than they would typically pay by retaining assets in an employer-sponsored retirement plan." (*Id.* ¶ 31). These layers included fees charged by the underlying funds in the portfolio, as well as a "variable asset-based management fee" charged by TIAA Services. (*Id.*). While these fees represented only a small percentage of the principal amount, Plaintiffs maintain that incremental increases in such fees could nevertheless pose a significant negative effect on account balances over the long term. (*Id.* ¶¶ 20, 31).

On the other hand, the fees from Portfolio Advisor also presented a valuable source of revenue for TIAA, in a competitive market in which TIAA was rapidly losing revenue from its institutional retirement plan business, as those institutional clients moved their assets from TIAA to larger competitors. (SAC ¶ 26). To that end, Plaintiffs allege that TIAA embarked on an ambitious plan to cross-sell Portfolio Advisor to the participants of TIAA-administered plans, and in doing so to persuade those participants to roll their assets out of the lower-fee employer-sponsored retirement plans in favor of the higher-fee, individually-managed Portfolio Advisor. (*Id.* ¶ 29). TIAA began its implementation of this strategy by more than tripling the size of its sales force from fewer than 300 "wealth management advisors" ("Advisors") in 2011 to nearly 900 Advisors by 2017. (*Id.* ¶ 32). These Advisors utilized a highly structured pitch process called the "Consultative Sales Process," discussed extensively in *Carfora I* and *II*, in which the Advisors cold-called participants in TIAA-administered plans, ostensibly under the guise of offering free financial

4

planning services, but with the undisclosed intent of pressuring those participants to switch to Portfolio Advisor.  (SAC ¶¶ 33-37).  *See Carfora I*, 631 F. Supp. 3d at 132-34; *Carfora II*, 2023 WL 5352402, at *1-2.

Plaintiffs allege that TIAA trained these Advisors to capitalize on participants' "'pain points' — a form of 'fear selling' used to push the participant to change her or his investments," and specifically identify "[o]fficial sales training material spell[ing] out TIAA's explicit goal of 'Making the Client Feel the Pain.'"  (SAC ¶¶ 34-35).  In doing so, TIAA instructed Advisors to engage in a form of "hat switch[ing]," in which the Advisors were told to wear "a fiduciary hat when acting as an investment adviser representative and a non-fiduciary hat when acting as a registered broker-dealer representative."  (*Id.* ¶¶ 60, 64).

According to Plaintiffs, this dual-hat system was not only confusing to Advisors and plan participants alike, but was also misleading and fraught with conflicts of interest.  (SAC ¶¶ 46-64).  For example, the Advisors allegedly used "an incomplete and misleading comparison of the pros and cons of rolling assets to Portfolio Advisor compared to remaining in employer-sponsored plans."  (*Id.* ¶ 65).  This included failing to inform participants of the fees and expenses associated with the rollover, and misleading participants into believing that if they did not do so, they would be left to manage their employer-sponsored plan accounts entirely by themselves.  (*Id.* ¶¶ 66-67).  Moreover, the Advisors were subject to their own "incentive compensation plan," which plan provided a performance-based bonus in part based on

convincing participants in lower-cost employer-sponsored plans to roll over assets to Portfolio Advisor.  (*Id.* ¶¶ 46-50).  On the flip side of the coin, TIAA also penalized Advisors who failed to meet sales goals, placing particular emphasis on those who failed to sell Portfolio Advisor.  (*Id.* ¶¶ 54-58). Notwithstanding this incentive-based compensation, TIAA affirmatively required Advisors to represent to plan participants that their recommendations were objective and non-commissioned.  (*Id.* ¶¶ 4, 39, 46).  Finally, Plaintiffs maintain that TIAA had no actual basis to conclude that Portfolio Advisor would actually serve participants' best interests from a performance perspective, and thereby validate its aggressive cross-selling strategy.  (*Id.* ¶ 70).  Indeed, Morningstar, a third-party investment research firm, projected in 2018 that Portfolio Advisor assets would perform worse than assets in employer-sponsored plans.  (*Id.*).

This strategy ultimately proved extremely lucrative to TIAA, which allegedly reaped "a 20-fold increase in [its] annual revenues generated from assets rolled over to Portfolio Advisor."  (SAC ¶ 131).  In total amount, this constituted an increase in revenues from $2.6 million to $54 million in the period from 2013 to 2018.  (*Id.*).

### 3.   The Plan Sponsors' Alleged Inaction

Plaintiffs allege that, all the while, their ERISA Plan Sponsors were unaware of TIAA's cross-selling campaign, and took no action to address its problematic elements.  (SAC ¶¶ 116-117).  This ignorance and inaction, Plaintiffs claim, was in violation of the well-established fiduciary duties owed

by Plan Sponsors to their participants, as set forth in ERISA.  (*Id.* ¶¶ 118-141).

Specifically, and as discussed further below, Plaintiffs argue that these duties

obligated their Plan Sponsors to monitor TIAA's activities, such that the Plan

Sponsors would have identified the cross-selling activities.  (*Id.* ¶¶ 125-130).

These duties further obligated the Plan Sponsors to require corrective

disclosures to mitigate problematic elements of TIAA's cross-selling campaign

(*id.* ¶¶ 131-135), or to potentially reevaluate TIAA's compensation as a service

provider to the ERISA plans, to account for this significant plan-related

revenue stream (*id.* ¶¶ 136-141).  Simply put, Plaintiffs allege that their Plan

Sponsors breached their fiduciary duties by allowing TIAA's affirmative and

unchecked cross-selling on their watch, and that TIAA, as the instigator of this

activity, was therefore a knowing participant in the breach.

**B.    Procedural History**

Plaintiffs initiated this lawsuit by filing a complaint against Defendants

on October 11, 2021.  (Dkt. #1).  After several rounds of reassignment, the case

was assigned to this Court on January 18, 2022, at which point the parties

had begun briefing Defendants' motion to dismiss the original complaint.

*Carfora I*, 631 F. Supp. 3d at 134-35.  On September 27, 2022, the Court

granted Defendants' motion, and dismissed the original complaint in its

entirety.  *Id.* at 156.  In doing so, the Court rejected Plaintiffs' original claims

that TIAA was an ERISA fiduciary during the relevant timeframe, such that

Plaintiffs could not state a claim under ERISA § 502(a)(3), 29 U.S.C.

§ 1132(a)(3).  *Carfora I*, 631 F. Supp. 3d at 153-54.  The Court further found that two of the named Plaintiffs' claims were time-barred.  *Id.* at 154-56.

On October 26, 2022, Plaintiffs filed a motion to alter or amend the judgment and for leave to file an amended complaint.  (Dkt. #51-52).  Following briefing on the motion, the Court issued an opinion granting, in limited part, Plaintiffs' motion.  *Carfora II*, 2023 WL 5352402, at *9-12.  The Court first found that Plaintiffs had not established any basis to depart from the logic of *Carfora I* with respect to their allegations of TIAA's direct breaches of any fiduciary duties owed to Plaintiffs.  *Id.* at *4-8.  Still, the Court recognized that Plaintiffs had identified a new theory of liability resting on allegations of TIAA's knowing participation in a breach of the fiduciary duties set forth under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  The Court therefore granted Plaintiffs leave to file an amended complaint as to the knowing participation claim only.  *Carfora II*, 2023 WL 5352402, at *12.

Plaintiffs did so, with the filing of an amended complaint on September 11, 2023.  (Dkt. #64).  Two weeks later, on September 25, 2023, Defendants filed a pre-motion letter seeking leave to file a motion to dismiss the amended complaint.  (Dkt. #65).  Plaintiffs filed a letter in opposition on September 28, 2023, and the Court held a pre-motion conference on October 12, 2023.  (Dkt. #66; October 12, 2023 Minute Entry).  Following that conference, the Court set a briefing schedule for the filing of a second amended complaint and a related motion to dismiss.  (Dkt. #70).

Consistent with that briefing schedule, Plaintiffs filed their Second Amended Complaint, the operative pleading in this case, on November 3, 2023. (Dkt. #71).  Defendants filed their motion to dismiss on December 18, 2023, and Plaintiffs filed their opposition brief on January 17, 2024.  (Dkt. #74-76). Finally, Defendants filed their reply in further support of their motion to dismiss on February 1, 2024.  (Dkt. #77).

## DISCUSSION

The SAC represents Plaintiffs' second iteration of claims against TIAA regarding the latter's allegedly problematic cross-selling campaign.  In particular, Plaintiffs have shifted their theory of liability from one alleging TIAA's first-party breach of a fiduciary duty, to one arising out of TIAA's knowing participation in breaches of fiduciary duty owed by Plaintiffs' ERISA Plan Sponsors to Plaintiffs.  (SAC ¶¶ 162-170).  Essentially, Plaintiffs now allege that it was their Plan Sponsors that breached the fiduciary duties that they owed under ERISA by failing to identify and address TIAA's cross-selling activities, and that TIAA was a knowing participant in these breaches, thereby exposing TIAA to liability under ERISA.  (*Id.*).  For the reasons set forth below, the Court finds that Plaintiffs have plausibly stated a claim.

## A.  Applicable Law

### 1.  Motions to Dismiss Under Rule 12(b)(6)

Generally speaking, when considering the adequacy of a complaint upon a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must (i) accept all of the complaint's factual allegations (but not legal conclusions)

as true, and (ii) determine whether it states a "plausible" claim for relief. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). In doing so, the court must always "draw all reasonable inferences in the non-movant's favor." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Put another way, the court's task is to "assess[] the legal feasibility of the complaint," not "weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

When evaluating ERISA cases, the Second Circuit has expressly instructed courts to take "particular care in applying [the Rule 12(b)(6)] inquiry in order to ensure that the complaint alleges *nonconclusory* factual content raising a *plausible inference* of misconduct." *Sacerdote* v. *N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021) (alteration adopted and citation omitted). That said, "as is true in many contexts, a claim under ERISA may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Id.* (further recognizing that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences").

At the motion to dismiss stage, a court may consider only "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *accord Goel* v. *Bunge, Ltd.*, 820 F.3d 554,

558-59 (2d Cir. 2016).  However, "where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' [rendering] the document 'integral' to the complaint."  *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

### 2. Claims Under ERISA Section 502(a)(3)

Section 404 of ERISA imposes fiduciary duties on administrators of ERISA retirement plans that, in pertinent part, require a fiduciary to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries ... for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1); *see also Bell* v. *Pfizer*, 626 F.3d 66, 73 (2d Cir. 2010).  The statute separately imposes a duty of prudence, mandating that fiduciaries discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use[.]"  *Id.*

In connection with these duties, "Section 502 of ERISA sets forth a civil enforcement scheme, defining the types of civil actions that can be brought and the parties entitled to seek relief under the Act."  *Bell*, 626 F.3d at 73 (citing 29 U.S.C. § 1132).  In particular, Section 502(a)(3) authorizes a civil action:

> by a participant, beneficiary, or fiduciary (A) to enjoin
> any act or practice which violates any provision of this
> subchapter or the terms of the plan, or (B) to obtain
> other appropriate equitable relief (i) to redress such
> violations or (ii) to enforce any provisions of this
> subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

By authorizing suits "to enjoin any actor or practice, which violates [ERISA]," Section 502(a)(3) extends liability for ERISA violations to certain non-fiduciaries, including for a non-fiduciary's knowing participation in a breach of the fiduciary duties set forth in Section 404.  29 U.S.C. § 1132(a)(3); *see Tr. of Upstate N.Y. Eng'rs Pension Fund* v. *Ivy Asset Mgmt.*, 843 F.3d 561, 571 (2d Cir. 2016).  "The well-settled elements of a cause of action for participation in a breach of fiduciary duty are [i] breach by a fiduciary of a duty owed to plaintiff, [ii] defendant's knowing participation in the breach, and [iii] damages." *Id.* (quoting *Diduck* v. *Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281-82 (2d Cir. 1992)).

## B.  Plaintiffs Have Plausibly Alleged Claims for Knowing Participation in a Breach of Fiduciary Duty

Defendants contend that the action must be dismissed on two principal bases: *first,* that Plaintiffs cannot establish that the Plan Sponsors breached any fiduciary duties in connection with their retention of TIAA as a third-party service provider; and *second*, that Plaintiffs have failed to allege facts sufficient to support any finding that TIAA was a knowing participant in the breach.  (*See* Def. Br. 7, 23).  The Court addresses each argument in turn.

1.     **Plaintiffs Have Sufficiently Alleged That Plan Sponsors Breached Fiduciary Duties in Connection with TIAA's Cross-Selling Activities**

The first element of a cause of action for knowing participation in a breach of fiduciary duty is the predicate breach of fiduciary duty itself.  *See Tr. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 571.  To satisfy this element, Plaintiffs allege that their Plan Sponsors breached their fiduciary duties of prudence by failing to detect and address TIAA's allegedly pernicious cross-selling activities directed at plan members.  (SAC ¶¶ 118-124, 131-135).  Plaintiffs separately contend that their Plan Sponsors, by failing to investigate TIAA's significant revenues gained through this cross-selling strategy, breached their fiduciary duties to monitor administrative expenses and service provider compensation.  (*Id.* ¶¶ 125-130, 136-141).  For the following reasons, both theories of breach are sufficiently pleaded to survive Defendants' motion to dismiss.

a.     **Plaintiffs Adequately Allege That the Plan Sponsors Breached Their Duties of Prudence by Failing to Identify and Address TIAA's Cross-Selling Campaign**

Pivoting from their allegations in *Carfora I*, Plaintiffs first maintain that TIAA's campaign of cross-selling was so notorious and problematic that any Plan Sponsor who failed to detect and curtail such activities must have breached its fiduciary duty of prudence.  This duty requires fiduciaries to act "solely in the interest of the participants" and "with the care, skill, prudence, and diligence under the circumstances then prevailing," as would be expected of a similarly-prudent sponsor "acting in a like capacity and familiar with such

matters." 29 U.S.C. § 1104(a)(1)(B); *see generally Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan* v. *Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 715 (2d Cir. 2013) ("*PBGC*") (discussing the "four distinct, but interrelated [fiduciary] duties" established under ERISA).  This duty is assessed "according to the objective prudent person standard developed in the common law of trusts," and requires the fiduciary to act with "prudence, not prescience." *Rinehart* v. *Lehman Bros. Holdings Inc.*, 817 F.3d 56, 63-64 (2d Cir. 2016) (internal quotation marks and citation omitted).

Turning to the facts, Plaintiffs have alleged a detailed account of conduct on the part of TIAA and to the detriment of plan participants that no prudent ERISA Plan Sponsor, acting solely in the interest of the participants, would have allowed to occur.  In addition to detailing the problems associated with the Consultative Sales Process at a general level, the named Plaintiffs each represent that they were subject to aggressive cross-selling, and rolled over their funds from their ERISA plans to Portfolio Advisor as a result.  (*See* SAC ¶¶ 134-135).  For example, Carfora specifically alleges that he was subject to emphatic cross-selling by a TIAA representative, who disavowed any conflict of interest in connection with her recommendation that Carfora execute a rollover to Portfolio Advisor from the Loyola Marymount University Defined Contribution Retirement Plan, and failed to inform Carfora that the fees and expenses of moving assets to Portfolio Advisor were higher than remaining in his employer-sponsored plan.  (*Id.* ¶ 134).

Carfora further alleges that the issues associated with TIAA's cross-selling were not specific to his case, but were in fact known across the industry as problematic practices by defined-contribution plan recordkeepers such as TIAA.  (SAC ¶¶ 119-121 (citing U.S. Gov't Accountability Office, *401(k) Plans: Improved Regulation Could Better Protect Participants from Conflicts of Interest*, at 36 (Jan. 28, 2011), https://perma.cc/MK59-L74T; U.S. Gov't Accountability Office, *401(k) Plans: Labor and IRS Could Improve the Rollover Process for Participants*, at 1 (Mar. 7, 2013), https://perma.cc/S5Z8-P5Q8)).  Carfora finally argues that the duty of prudence obligated his Plan Sponsors to have investigated TIAA's activities and taken appropriate action to protect the interests of plan participants, whether through an outright prohibition on cross-selling or through disclosures necessary to fully inform plan members of the consequences of a rollover decision.  (Pl. Opp. 8-9 (citing SAC ¶¶ 123-124)).

At a minimum, Plaintiffs' well-pleaded allegations of such conduct support the pleading-stage finding that the Plan Sponsors "failed to monitor the Plans' investments in a number of ways, including by retaining recordkeepers" that engaged in problematic conduct designed to drive participants from the plans to TIAA's own offerings.  *Hughes* v. *Nw. Univ.*, 595 U.S. 170, 175-76 (2022) (citing *Tibble* v. *Edison Int'l*, 575 U.S. 523, 530-31 (2015)); *see also* 29 C.F.R. § 2550.404c-1(d)(2)(iv) (explaining that, while a Plan Sponsor cannot be held responsible for losses arising out of a plan participant's exercises of independent control over her asset, this exception "does not serve to relieve a fiduciary from its duty to prudently select and monitor any service

provider" affiliated with the plan).  Furthermore, these allegations plausibly establish that the Plan Sponsors breached their fiduciary duties in connection with their related failure to inform plan participants of the conflicts of interest inherent in TIAA's cross-selling activities.  *See Estate of Becker* v. *Eastman Kodak Co.*, 120 F.3d 5, 10 (2d Cir. 1997) (finding employer was under a "fiduciary duty to provide [an employee] with complete and accurate information about her retirement options"); *Kenseth* v. *Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010) (collecting cases and observing that ERISA's duty of prudence incorporates an "affirmative obligation to communicate material facts affecting the interests of beneficiaries"); *Eddy* v. *Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990) (similarly remarking that "[t]he duty to disclose material information is the core of a[n] [ERISA] fiduciary's responsibility").

In reaching this conclusion, the Court is unmoved by Defendants' arguments to the contrary, namely that Plaintiffs' position is foreclosed by *Bell* v. *Pfizer*, in which case the Second Circuit held that the fiduciary duties of a plan sponsor do not stretch to non-plan conduct.  (Def. Br. 9 (citing *Bell*, 626 F.3d at 74)).  While *Bell* might hold true to relieve a Plan Sponsor from any duty to monitor TIAA's activities after a plan member has rolled over their funds, Plaintiffs' theory of breach lies in the Plan Sponsor's failure to address TIAA's cross-selling activities up to and until the time of rollover, *i.e.*, while plan members are still ERISA plan participants.  (*See* SAC II.A (detailing how "TIAA implemented a corporate strategy designed to induce participants to roll

16

assets out of their retirement plans and into TIAA's high-cost non-plan products")).  Indeed, Plaintiffs plausibly allege that TIAA's strategy of cross-selling specifically targeted plan participants, and was necessarily done "with respect to [the] plan," thereby implicating the fiduciary duties of the Plan Sponsors.  29 U.S.C. § 1104(a)(1).  (*See, e.g.*, SAC ¶ 90 (alleging that TIAA, "acting through the Advisors …, rendered investment advice with respect to ERISA plan moneys each time an Advisor executed TIAA's Consultative Sales Process")).  Nor is it significant that ERISA does not contain specific statutory disclosure requirements pertaining to non-plan offerings by service providers, as such disclosures are animated by the law of trusts, which informs ERISA's duty of prudence, and which explicitly recognizes "a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary … which [facts] the beneficiary needs to know for his protection in dealing with a third person."  *Kenseth*, 610 F.3d at 466 (quoting RESTATEMENT (SECOND) OF TRUSTS § 173, *cmt. d* (1959)); *see also Tibble*, 575 U.S. at 528 (observing that "an ERISA fiduciary's duty is derived from the common law of trusts" (internal quotation marks and citation omitted)).

Next, Defendants assert that even accepting that the Plan Sponsors had a duty to address the issue of cross-selling, Plaintiffs' allegations do not plausibly demonstrate a breach of any duty by the Plan Sponsors, as they are concerned solely with the TIAA representatives' statements, and do not identify conduct by the Plan Sponsors.  (Def. Br. 12).  However, and as discussed above, Plaintiffs' theory of breach lies in the inaction of Plan Sponsors, such

that this lack of detail is not necessarily fatal to Plaintiffs' claims.  *See PBGC*, 712 F.3d at 719 (recognizing that "details about a fiduciary's methods" are in the fiduciary's "sole possession," and thus might be unattainable prior to discovery).  Drawing all inferences in Plaintiffs' favor, the Court finds that TIAA's ability to engage in a multi-year campaign of cross-selling supports the implication that the Plan Sponsors failed to identify and address the problem, thereby providing "sufficient circumstantial factual allegations to support the claim, even [in the absence of] direct allegations of misconduct."  *Sacerdote*, 9 F.4th at 107; *see also Donovan* v. *Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982) (remarking that ERISA's fiduciary duties are "the highest known to the law"); *John Hancock Mut. Life Ins. Co.* v. *Harris Tr. & Sav. Bank*, 510 U.S. 86, 96 (1993) ("Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive.").

> **b.     Plaintiffs Plausibly Allege That the Plan Sponsors Breached Their Duties of Prudence by Failing to Monitor TIAA's Activities**

Next, Plaintiffs identify a separate breach of fiduciary duty in connection with the Plan Sponsors' failure to monitor TIAA's cross-selling activities and attendant revenue.  This duty to monitor is implicit within the broader duty of prudence, and provides that "fiduciaries must [] understand and monitor plan expenses," in connection with their broader obligation to "'monitor … investments and remove imprudent ones.'" *Sweda* v. *Univ. of Penn.*, 923 F.3d 320, 328 (3d Cir. 2019) (quoting *Tibble*, 575 U.S. at 530); *see also Hughes*, 595

U.S. at 175 (finding allegations that a plan sponsor "failed to monitor the [p]lans' investments in a number of ways, including by retaining recordkeepers that charged excessive fees" sufficient to state a claim for breach of the duty to monitor (citing *Tibble*, 575 U.S. at 530-31)).

Plaintiffs generally allege that TIAA's cross-selling revenues during the at-issue period grew exponentially — *i.e.*, by over 2,000% — during the period from 2013-2018, and that the Plan Sponsors should have recognized that growth in revenue and taken it into account when negotiating TIAA's compensation as a recordkeeper.  (Pl. Opp. 13-14 (citing SAC ¶¶ 126-130)).  Plaintiffs support this allegation with Department of Labor regulations and guidance requiring fiduciaries to obtain information regarding the amount of "indirect" compensation that service providers such as TIAA receive from sources "other than the covered plan" for a service contract or arrangement to be deemed reasonable.  29 C.F.R. § 2550.408b-2(c)(1)(iv)(C)(2), (c)(1)(iv)(D)(1), (c)(1)(viii)(B)(2); *see also* U.S. Dep't of Labor Advisory Op. No. 2013-03A, 2013 WL 3546834, at *4 (July 3, 2013) (advising that "fiduciaries must obtain sufficient information regarding all fees and other compensation" received by the provider "to make an informed decision as to whether [the provider's] compensation for services is no more than reasonable").  Ultimately, Plaintiffs maintain that by failing to identify and account for TIAA's revenue associated with cross-selling, the Plan Sponsors breached their fiduciary duty by permitting TIAA to receive unreasonable compensation, because TIAA's actual

compensation included both its contractual fees and the increasingly large amount of indirect revenue derived from cross-selling.  (*See* SAC ¶¶ 137-139).

As both parties are aware, this theory of breach closely tracks the outcome of *Vellali* v. *Yale University*, in which case the district court denied the defendants' motion for summary judgment regarding the plaintiffs' claims that their plan sponsors "breached their fiduciary duty by imprudently failing to prohibit TIAA from cross-selling."  *Vellali* v. *Yale Univ.*, No. 16 Civ. 1345 (AWT), 2022 WL 13684612, at *12 (D. Conn. Oct. 21, 2022).  There, as here, the plaintiffs alleged that the plan sponsor breached its duty by "ma[king] no effort to obtain information about TIAA's cross-selling revenues and thus could not make an informed decision about whether TIAA's total compensation, including that from cross-selling, was no more than reasonable."  *Id.* at *13.  And in denying summary judgment, the district court observed that such allegations were sufficient to "create[] genuine issues of material fact as to" the plaintiffs' "claim that under the circumstances [the plan sponsor] should have prohibited cross selling."  *Id.* at *12.

Defendants maintain that Plaintiffs' failure to provide sufficient allegations regarding the specifics of Plan Sponsors' monitoring efforts distinguishes this case from *Vellali*.  (Def. Br. 16).  But this argument elides the fact that the court's decision in *Vellali* was made at summary judgment, where such facts were to be expected.  2022 WL 13684612, at *12-13.  In this case, however, Plaintiffs are not required to plead the specifics of the Plan Sponsors' conduct prior to discovery, provided they are able to identify sufficient

circumstantial evidence supporting the claim. *See Sacerdote*, 9 F.4th at 108 (holding that a complaint alleging breach of fiduciary duty "will 'survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed'" (quoting *PBGC*, 712 F.3d at 718)). And Plaintiffs clear this bar by identifying TIAA's significant increase in revenues, relative to its projected earnings under its contracts with the plans, as circumstantial evidence that Plan Sponsors must have breached their duty to monitor TIAA's compensation, either by not detecting this substantial source of indirect income, or by detecting and not renegotiating their contracts with TIAA to account for the amount.

Nor does the Second Circuit's decision in *PBGC* change the outcome of this case. *See generally PBGC*, 712 F.3d at 705-28. That case is qualitatively different from this one, as it concerned allegations of a breach of the duty of prudence in connection with a plan manager's investment decisions. *Id.* at 712. In particular, the underlying plaintiff in *PBGC* brought an ERISA action against its plan manager, alleging that the plan manager violated its duty of prudence by investing in risky mortgage-backed securities, as evidenced exclusively by the significant losses suffered by the plan following the subprime mortgage crisis. *Id.* at 713 (observing that the amended complaint contained "no allegations of inadequacy of [the plan manager's] investigation of the merits of its investments," and "was instead premised on the poor results of the investments made by [the plan manager]" (alteration adopted and internal quotation marks omitted)).

On appeal, the Second Circuit affirmed the dismissal of the action, reiterating the well-established principle that the "allegation of a decline in price indicates only that the security *turns out to have been, in hindsight*, a bad investment," and therefore "does not alone suffice to state a claim under ERISA." *Id.* at 721.  Such allegations, the Court found, came up short of the pleading standard, as they did not "give rise to a 'reasonable inference' that the defendant" had been imprudent in its investment process, and instead merely were consistent with the hindsight view that investing in the securities had been a bad decision.  *Id.* at 718-19 (quoting *Iqbal*, 556 U.S. at 678).

The allegations of this case, however, are different, as they do not concern the Plan Sponsors' discretionary decisionmaking process with respect to the plans' investments.  Rather, Plaintiffs maintain that their Plan Sponsors acted imprudently with respect to the ordinary administration of their plans, notably by failing to determine whether the revenue TIAA earned from cross-selling was reasonable in the context of its broader contractual relationship with the plans, and thereby "make an informed decision about whether TIAA's total compensation, including that from cross-selling, was no more than reasonable."  *Vellali*, 2022 WL 13684612, at *13.  At this initial stage, the 2,000% increase in TIAA's cross-selling revenues over the relevant five-year period supports a reasonable inference that the Plan Sponsors failed to monitor TIAA's fees, given that the increase far outstrips anything that TIAA would have seen in its ordinary course of business servicing ERISA plans.  *See Hughes*, 63 F.4th at 631 ("[A] fiduciary who fails to monitor the reasonableness of plan fees

and fails to take action to mitigate excessive fees may violate the duty of prudence.").

Relatedly, it is the sheer magnitude of the increase in revenue, coupled with the fact that TIAA's cross-selling allegedly provided little benefit to the plans themselves, that also supports a pleading-stage inference that the fees were excessive. *See Singh* v. *Deloitte LLP*, 650 F. Supp. 3d 259, 266 (S.D.N.Y. 2023) (observing that "[w]ell-reasoned decisions in this Circuit have found that plaintiffs must plausibly allege that the administrative fees were excessive relative to the services rendered" (internal quotation marks omitted) (collecting cases)). Indeed, TIAA's cross-selling practice ostensibly burdened the plans it serviced by allegedly sowing confusion amongst plan members regarding the benefits of maintaining their assets in an ERISA plan, and ultimately incentivizing at least some plan members to roll assets out of the plan in favor of TIAA's non-plan offering. *Cf. Tibble*, 575 U.S. at 525 (remarking that the duty to monitor includes accounting for "[e]xpenses, such as management or administrative fees, [which] can significantly reduce the value of an account in a defined-contribution plan"). TIAA may later, with the benefit of discovery, rebut the alleged downside of its cross-selling activities, and maintain that such a practice was consistent with its other services offered to the Plan Sponsors. For now, however, Plaintiffs have adequately alleged that the Plan Sponsors breached their fiduciary duty to monitor TIAA's revenues.

###### 2.    Plaintiffs Sufficiently Allege That TIAA Was a Knowing Participant in the Plan Sponsors' Breaches

Having found that Plaintiffs have plausibly established two predicate breaches of the Plan Sponsors' fiduciary duties, the Court briefly considers whether Plaintiffs have plausibly alleged that TIAA was a knowing participant in the breach.  To satisfy this element, a plaintiff must allege facts plausibly demonstrating that the nonfiduciary defendant had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Tr. & Savings Bank* v. *Salmon Smith Barney, Inc.*, 530 U.S. 238, 249-51 (2000).  "[T]he most natural reading of 'actual or constructive knowledge … ' requires knowledge of the underlying *factual* circumstances relevant to lawfulness, not knowledge of the *legal conclusion* that the transaction was unlawful." *Haley* v. *Teachers Ins. and Annuity Assoc. of Am.*, 377 F. Supp. 3d 250, 261 (S.D.N.Y. 2019) (quoting *Harris*, 530 U.S. at 251).

In this case, TIAA and its years-long cross-selling strategy lie at the heart of both of the predicate theories of breach of fiduciary duty.  Plaintiffs allege that TIAA not only profited immensely from the cross-selling activities, but also caused the Plan Sponsors to engage in such behavior in the first place.  *See Carfora II*, 2023 WL 5352402, at *11.  While it may be the case that the simple act of "cross-selling is neither inherently wrong nor a *per se* breach of fiduciary duty," *Reetz* v. *Lowe's Cos., Inc.*, No. 18 Civ. 75 (KDB), 2021 WL 4771535, at *51 (W.D.N.C. Oct. 12, 2021) (internal quotation marks omitted), *aff'd sub nom. Reetz* v. *Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171 (4th Cir. 2023), Plaintiffs' theory of breach lies in TIAA's campaign of cross-selling at an institutional

scale; in that regard, Plaintiffs have alleged in great detail the systematic efforts on TIAA's part to drive members from their ERISA plans and into TIAA-sponsored offerings, with little upside to those participants.  Such allegations suffice to establish knowing participation for the purposes of a motion to dismiss.  *Cf. Carfora II*, 2023 WL 5352402, at *11 (finding such allegations, "in line with the theory argued in *Vellali*, ... [are] sufficient" to withstand a futility analysis).  Finally, because TIAA does not dispute the sufficiency of Plaintiffs' damages allegations, the Court finds that Plaintiffs have plausibly alleged that TIAA knowingly participated in Plan Sponsors' breaches of their fiduciary duties set forth in Section 404 of ERISA.  *See Tr. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 571.

## CONCLUSION

As set forth in the foregoing analysis, Defendants' motion to dismiss is hereby DENIED.  The Clerk of Court is directed to terminate the pending motion at docket entry 74.

Defendants shall file their answer to the SAC on or before **June 21, 2024**.  Thereafter, the parties shall meet and confer, and provide a joint case management plan on or before **June 28, 2024**.

SO ORDERED.

Dated:     May 31, 2024
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge