**Schlichter Bogard**

100 South 4th Street, Suite 1200    314.884.7703
St. Louis, MO 63102    1.800.873.5297

Joel Rohlf    jrohlf@uselaws.com

*<u>Via ECF</u>*

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007



January 23, 2026

Re:    *Carfora et al. v. TIAA et al.*, No. 21-08384 (KPF) (S.D.N.Y.)
       **Opposition to Letter Motion Regarding Waiver of Marital Communications Privilege**

Dear Judge Failla:

Plaintiffs write in opposition to Defendants Teachers Insurance and Annuity Association of America and TIAA-CREF Individual & Institutional Services, LLC's (collectively, "TIAA") letter motion to compel Plaintiffs to produce five email exchanges between named plaintiff, Dr. Sandra Putnam, and her husband, Dr. Ian Rockett. Neither Dr. Putnam nor Dr. Rockett waived the marital communication privilege during their depositions.

The Supreme Court has made it clear that spousal communications are generally assumed to be confidential and privileged:

> [T]he "marital communications privilege," protects private and confidential communications between spouses from disclosure[.] . . . It provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged[.]"

*In re Res. Fund Secs. & Derivative Litig. v. Res. Mgmt. Co.*, 275 F.R.D. 154, 157 (S.D.N.Y. 2011) (citations omitted).

However, the privilege can be waived if the witness testifies to the *content* of their confidential marital communications. *See Engelmann v. Nat'l Broad. Co.*, 94-5616-AJP, 1995 U.S. Dist. LEXIS 4725, at *9 (S.D.N.Y. Apr. 6, 1995) ("[T]he confidential marital communications privilege may be waived by some act of testimony which in fairness places the person in a position not to object to further disclosure." (quoting *United States v. Brown*, 634 F.2d 819, 829 (5th Cir. 1981))). Specifically, the privilege is waived "[w]hen a witness . . . has . . . testified voluntarily about the *contents* of certain confidential marital communications[.]" *United States v. 281 Syosset Woodbury Rd.*, 71 F.3d 1067, 1072 (2d Cir. 1995) (emphasis added); *see also Stanfield v. Dart*, No. 10-06569, 2011 U.S. Dist. LEXIS 127029, at *12 (N.D. Ill. Nov. 3, 2011) ("A waiver requires an intentional disclosure of the *content* of the confidential communication by

the party seeking to invoke the privilege." (citing 2 Stone and Taylor, Testimonial Privileges § 5.12 at 5-28 to 5-30 (2d ed. 1993)) (emphasis added)).[1]

For example, in *Engelmann*, which TIAA primarily relies on in its letter motion, the court held that the marital communications privilege was waived when, without objection from counsel, a witness voluntarily described the content of her conversations with her husband in response to deposition questions. 1995 U.S. Dist. LEXIS 4725, at *10–12 (citing the deposition transcript where counsel asked, "*What did your husband say?*" and the wife responded, "*He was very upset, but he was good enough to say, 'It's your career. You handle it as you see you should[]'*" (emphasis in original)). Thus, the essential inquiry is whether the witness characterizes the content of private marital communications. *See id.* at *10.

Neither Plaintiffs nor TIAA dispute that a valid marital communications privilege exists between Dr. Putnam and Dr. Rockett. Instead, TIAA argues that the privilege was waived during Dr. Putnam and Dr. Rockett's depositions as it pertains to the 2017 *New York Times* article and TIAA's regulatory settlements. However, in all the instances TIAA cites to support its waiver argument, TIAA's counsel *never* asked what was said between Dr. Putnam and Dr. Rockett. Further, Dr. Putnam and Dr. Rockett *never* characterized or described the content of their conversations.

Dr. Putnam and Dr. Rockett never testified regarding what they said to each other about the 2017 *New York Times* article and they were never asked to. *See* Doc. 211-03, Putnam Tr. 99:4–25 ("Q. Tell me what your reaction was to the article? A. . . . And I talked to my husband, and I shared the article."); 113:11–16 ███████████████████████████████ 113:18–114:2 ("Q. And you indicated that you also provided the article to your husband? A. Yes. Q. And what was your reason for doing that? A. Well, he was retiring, too. . . . . And we were wanting to make sure that we were safe and protected."); 164:6–12 ("Q. So I was going to ask you, before you opened your TIAA account, you had read the New York Times article. . . . You had shared that article with your husband. A. Right."); *see also* Doc. 211-04, Rockett Tr. 137:17–138:18 ("Q. Did you and your wife discuss this article? A. Not much. . . . we discussed an article. I don't know if it's this one. . . . We discussed an article, not at great length, and one reason I had some interest in it is – and she might have too – is it's a reference to Saint Michael's College. We know someone who works there. . . . Q. So you do recall discussing a New York Times article with your wife; correct? A. Yes, but not in much detail. Q. What do you remember about the discussion? A. That it was, you know, probably a bit disturbing. But I don't know the timing of it."). The cited testimony clearly indicates that, unlike in *Englemann*, Dr.

---

[1] TIAA cites *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 668–69 (9th Cir. 2003), to assert that the marital communications privilege can be waived where a witness acknowledges during a deposition that he had a conversation with his wife. This case does not stand for that proposition. In fact, the court was determining whether the marital privilege was waived under California law, and the court held that when "[d]uring the same deposition, [a]ppellant specifically described portions of the recorded conversations, and also acknowledged that he and [his wife] discussed the [underlying] claim" the privilege was waived. *Id.* at 668. However, the Court explicitly clarified that "[a] deponent does not necessarily lose a privilege by referencing a privileged communication." *Id.* If affirming a conversation waives the privilege, then a deposing party could never establish whether a conversation occurred. As *Englemann* makes clear, establishing a conversation took place is necessary to assert the privilege. 1995 U.S. Dist. LEXIS 4725, at *10–12.

Putnam and Dr. Rockett only acknowledged that a conversation took place. This is not enough to waive the marital communications privilege.

In *Englemann,* the Court found that the privilege was waived as to all conversations the witness had with her husband regarding the matter, even when the witness did not disclose the content of every conversation with her husband, because the witness clearly was not reluctant to disclose the content of the conversations, as she did on multiple occasions; instead, any lack of disclosure appeared to be the result of counsel's lack of follow-up questions. *See Engelmann*, 1995 U.S. Dist. LEXIS 4725, at *14 n.5. Unlike that case, here Dr. Putnam and Dr. Rockett never willingly disclosed the content of *any* of their marital communications. TIAA even admits as much in their letter motion, stating that "Putnam and Rockett could not relay the specific contents of their conversations[.]" Doc. 211 at 3.

The marital communication privilege is "regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails[.]" *In re Res. Fund Sec. & Derivative Litig.*, 275 F.R.D. at 157. As a result, these communications between Dr. Putnam and Dr. Rockett are not subject to disclosure. They have not waived the marital communications privilege as to any topic.

For these reasons, Plaintiffs respectfully request that the Court deny TIAA's Letter Motion Regarding Waiver of Marital Communications Privilege because Dr. Putnam and Dr. Rockett never disclosed the content of their conversations. TIAA has requested a conference with the Court on this matter. While Plaintiffs do not believe a conference on this issue is necessary, they defer to the Court if it believes a conference would be helpful.

Respectfully submitted,

s/ *Joel D. Rohlf*
Joel D. Rohlf
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934
jrohlf@uselaws.com

*Attorneys for Plaintiffs & the Proposed Class*

cc: All counsel of record (via ECF)

The Court has reviewed Defendants' letter motion seeking the production of certain communications involving named Plaintiff Ms. Putnam and her husband Mr. Rockett (Dkt. #211-212); their request to provisionally seal a portion of that letter motion (Dkt. #210); Plaintiffs' request to permanently seal that same portion of Defendants' letter motion (Dkt. #214); Plaintiffs' opposition to Defendants' letter motion (Dkt. #216-217); and Plaintiffs' request to seal their opposition (Dkt. #215).  In short, the Court GRANTS all requests to seal and DENIES Defendants' request for the production of the communications between Ms. Putnam and Mr. Rockett.

The spousal communications privilege may  be waived if a witness testifies as to the content of a spousal communication.  *See, e.g.*, *United States* v. *281 Syosset Woodbury Rd.*, 71 F.3d 1067, 1072 (2d Cir. 1995); *Engelmann* v. *Nat'l Broad. Co., Inc.*, No. 94 Civ. 5616 (MBM) (AJP), 1995 WL 214500, at *3 (S.D.N.Y. Apr. 10, 1995).  The parties disagree here about whether Ms. Putnam or Mr. Rockett waived the spousal communications privilege in prior depositions.  (*Compare* Dkt. #211, *with* Dkt. #216).  The Court holds that they did not.

Ms. Putnam's testimony reveals only *that* she talked to Mr. Rockett about the article at issue, not what they talked about.  (Dkt. #211-3 at 99:4-99:25, 164:6-164:12; Dkt. #212-1 at 113:11-113:16).  Her testimony also explains *why* they discussed the article, but again does not divulge what the conversation entailed.  (*Dkt.* #211-3 at 116:18-117:8).  The cases Defendants rely on are far different.  In *Engelmann*, for example, the court found waiver where a spouse "characteriz[ed] several private marital conversations" without objection. *Engelmann*, 1995 WL 214500, at *3.  Nowhere does Ms. Putnam characterize her communications with Mr. Rockett.  She was not asked to, so her counsel's failure to object is immaterial.  Therefore, she never waived the spousal communications privilege.

Defendants' better argument is that Mr. Rockett waived the privilege when he was asked what he "remember[ed] about the discussion" with his wife concerning the article, and he, without objection, responded "[t]hat [the article] was, you know, probably a bit disturbing."  (Dkt. #211-4 at 138:15-138:18).  That answer was closer to revealing content of the communications, but it was the extent of Mr. Rockett's testimony on the conversation.  The Court refuses to rely on one vague statement to say that Mr. Rockett's "testimony ... , taken as a whole, was sufficiently broad to constitute a waiver." *Engelmann*, 1995 WL 214500, at *4.  As such, the Court refuses to find that Mr. Rockett or Ms. Putnam waived the spousal communications privilege.

The Clerk of Court shall maintain docket entries 212 and 217 under seal.  The Clerk of Court is further directed to terminate the pending motions at docket entries 210, 211, 212, 214, and 215.

Dated:    January 27, 2026
          New York, New York

SO ORDERED.

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE